## Kerry et ux. v. West Penn Power Company.

*Corporations—Power companies—Eminent domain—Damages.*

1. Compensation under the right of eminent domain is determined according to the full measure of the rights acquired, and not according to the mode in which the rights are exercised.

2. Where a power company condemns a right of way through a farm and attaches to its bond a blue-print showing boundaries of the farm and the location of the right of way, and incidentally showing eight red dots, indicating the location of eight poles, the blue-print answers no other purpose than to locate the course or centre line of the right of way.

3. In such case, the damages must be assessed, not on the present number of poles, but on the right in the company to increase the number within its right of way according to its future needs. The adding of poles is not an additional servitude calling for new condemnation proceedings.

Rule for new trial. C. P. Butler Co., Sept. T., 1923, No. 55.

*Zeno F. Henninger*, for plaintiffs; *Jackson & Troutman*, for defendant.

HENNINGER, P. J., Jan. 2, 1925.—Plaintiffs own a farm in Center Township, Butler County, Pennsylvania. Defendant is a corporation engaged in transporting electricity for heat, light and fuel in large quantities and of high voltage. By the Act of May 21, 1921, P. L. 1057, defendant was endowed with the right of eminent domain, and by the exercise of such right has condemned a right of way over plaintiffs' land for a high-tension transmission line. This suit is a step in the condemnation proceedings fixing the amount of compensation to be paid. It was submitted to the jury and verdict rendered. Defendant moves for a new trial, assigning the general reasons that the court erred in admitting incompetent testimony, rejecting testimony and in its charge to the jury. Also, that the verdict is excessive. No particular error has been designated or question raised.

At argument, it was stated by defendant's counsel that the only questions pressed are: First. Did the court properly interpret the resolution of condemnation and the bond filed in compliance therewith? Second. Is the verdict excessive?

The resolution reads as follows:

"*Resolved*, that it is to the best interest and advantage of this Company that said Company, under its corporate powers and for its proper corporate uses, enter upon, take and appropriate a right of way for a transmission line supported on wood poles for the transmission and distribution of electric light, heat and power, or any of them, over and upon property hereinafter referred to, together with the right to enter upon said property for the purpose of constructing, operating, maintaining, rebuilding and removing said transmission and distribution system, and also together with the right to cut

and trim such trees or shrubbery located within one hundred (100) feet of the center line of said right of way, as may be necessary to keep the wires and cables free from interference and to protect said transmission and distribution system from possible falling timber, the center line of which right of way is described as follows, to wit: Beginning at a point on a property line common to lands of Frank Benagar and lands of John Kerry and May Kerry, situate in Center Township, Butler County, Pennsylvania, said point the place of beginning being located westwardly along said property line a distance of five hundred ninety-seven (597) feet more or less from a property corner common to lands of Norman Cramer, lands of Frank Benagar and lands of John Kerry and May Kerry; thence from the aforesaid place of beginning through lands of John Kerry and May Kerry, following a center line having bearing North sixteen degrees forty minutes West (N. 16° 40' W.) a distance of twelve hundred two (1202) feet more or less to a point on a property line common to lands of John Kerry and May Kerry, and lands of John Young; said point being located southeastwardly along said property line a distance of three hundred thirteen (313) feet more or less from a property corner common to lands of John Kerry and May Kerry, lands of Albert Rider, lands of the Bessemer and Lake Erie Railroad Company and lands of John Young; thence continuing on the aforementioned center line having bearing North sixteen degrees forty minutes West (N. 16° 40' W.) a distance of one hundred ninety-two (192) feet more or less to a point in lands of John Young. Said transmission line being located upon the property of John Kerry and May Kerry, and property of John Young, situate in Center Township, Butler County, Pennsylvania; the property appropriated, however, being the property of John Kerry and May Kerry; said right of way being necessary to construct a transmission line from the sub-station of this Company located at Butler, Butler County, Pennsylvania, to a proposed transformer station to be located near Anandale, Cherry Township, Butler County, Pennsylvania; said occupation being authorized by Act of Assembly of the Commonwealth of Pennsylvania, approved May 21, 1921, P. L. 1057; and be it further resolved, that the proper officers of this Company be and are hereby authorized and directed to execute in the name and under the corporate seal of said Company bonds upon the conditions hereinabove set forth and do such other and further acts as may be neccessary in the premises."

Defendant company obtained a certificate of public convenience from the Public Service Commission of Pennsylvania in accordance with the act of assembly, and then presented its bond to court, which was approved. Attached to the bond is a blue-print showing the boundaries of plaintiffs' farm and the location of the right of way condemned thereon. Incidentally, it also shows eight red dots on the centre line of the right of way and contains a memorandum, "John & May Kerry, eight poles." The blue-print is referred to on the face of the bond as follows: "Upon the route or course shown in red on blue-print attached and made a part hereof."

We held that the blue-print did not limit the rights acquired by the defendant company by its condemnation resolution, and performed no purpose or function except to locate the route or course by centre line of right of way. The evidence taken in the case establishes that a transmission line does not mean a single wire, but any number of wires desired by the party erecting it, so long as they are supported on a single line of poles; that the cross-arms in use in such lines have no definite or fixed length, but are determined by the necessity of each line, depending on the number of wires needed; that the more lines used, the more poles necessary; and that there is no limit to

the length or number of cross-arms used in a single transmission line; that a transmission line may not consist of less than three wires and may consist of any number.

We interpreted the resolution together with the bond, and instructed the jury that the defendant company had acquired a right of way for a transmission line, together with the right to construct, operate, inspect, maintain and repair a transmission line thereon; that it included the right to add wires and poles as necessity may demand; change wires and poles when, in defendant's judgment, it becomes necessary to properly transmit the electricity desired.

The defendant sought to have us instruct the jury that the damages must be assessed on the basis of the present number of poles, but it only contended for such instruction as to poles. It agreed that it had the right to add or change cross-arms, braces, guy wires and transmission wires, but contended that if it added or changed poles, it would be adding additional servitude, and, therefore, would be required to condemn such additional rights. We failed then, and fail yet, to see any reason for the distinction contended for. The defendant contends that the distinction arises from the fact that the blue-print filed with the bond designated the number of poles, and that the defendant is now estopped from claiming greater rights. This is a very ingenious and unusual application of the principle of estoppel. The plaintiff is now insisting on an estoppel of itself for the purpose of reducing damages. We know of no reason or authority to sustain such an unusual contention. The reference in the bond to the attached blue-print is simply to show the route and course of the right of way. It so states, and there is nothing connected with it that could, by inference or otherwise, extend its scope or limit defendant's rights.

However, should we concede that it was intended to show the number of poles for the proposed first construction, that would not limit defendant's rights, under its resolution of condemnation, to add or subtract poles in maintaining the line, nor would it limit plaintiff's right to damages. He recovers once for all, and so long as the future changes are in line with the use for which the land was first taken and merely reflect an advance in the original purpose, they are simply an exercise of the easement originally obtained and no additional servitude. All courts recognize that the compensation is determined according to the full measure of the rights acquired and not according to the mode in which the rights are first exercised.

Conceding, therefore, that the blue-print intended to show the mode in which defendant proposed to first exercise the right acquired, it does not follow that it measures defendant's rights, nor does it follow that the defendant may not later on exercise its full rights without adding an additional servitude. The theory of the defendant is that whenever the defendant finds it necessary or convenient to change or add to the number of poles, it must condemn such additional rights. To allow such a contention to prevail would be to make damages in a condemnation proceeding a continuous performance, such that the law never contemplated nor the plaintiff or the defendant desire.

We see no reason why the change or addition of a pole, whenever it becomes necessary, should add an additional servitude, any more than the adding of tracks or trains by a railroad company. The right of way that the defendant acquired was for one transmission line, and as long as the changing or adding of poles are necessary to maintain one line, they do not constitute an additional servitude. We are, therefore, not convinced that we erred in construing the resolution and bond as we did.

Kerry et ux. *v.* West Penn Power Company.

While, in our opinion, the verdict is fully sustained by the evidence and fairly reflects the evidence as to the amount thereof, yet, as some of the witnesses stressed the liability of injury, we conclude, in order to eliminate any possibility of speculative damages, to reduce the verdict $300.

And now, Jan. 2, 1925, if counsel for plaintiffs signify their consent to said reduction by paper filed within thirty days from this date, the prothonotary shall enter the following order: Motion for new trial refused and judgment shall thereupon be entered for the plaintiff in the sum of $1250, with costs. If plaintiffs do not file such consent within said time, the prothonotary shall enter the following order: New trial granted.

From Thomas H. Greer, Butler, Pa.